1    WO

6    **IN THE UNITED STATES DISTRICT COURT**

7    **FOR THE DISTRICT OF ARIZONA**

9    Kerina Denise Sanders,                              No. CV-18-0266-TUC-LCK

10                          Plaintiff,                   **ORDER**

11   v.

12   Andrew Saul,

13                          Defendant.

15          Plaintiff Kerina Sanders filed this action pursuant to 42 U.S.C. § 405(g) seeking

16   judicial review of a final decision by the Commissioner of Social Security (Commissioner).

17   (Doc. 1.) Before the Court are Sanders's Opening Brief, Defendant's Responsive Brief,

18   and Sanders's Reply. (Docs. 16, 17, 20.) The parties have consented to Magistrate Judge

19   jurisdiction. (Doc. 13.) Based on the pleadings and the administrative record, the Court

20   affirms the Commissioner's decision.

21                          **PROCEDURAL HISTORY**

22          Sanders filed an application for Disability Insurance Benefits (DIB) and

23   Supplemental Security Income (SSI) in August 2014. (Administrative Record (AR) 213,

24   216.) She alleged disability from June 4, 2014. (AR 213.) Sanders's application was denied

25   upon initial review (AR 89-110) and on reconsideration (AR 111-38). A hearing was held

26   on January 9, 2017. (AR 58-88.) Subsequently, the ALJ found that Sanders was not

27   disabled. (AR 33-45.) The Appeals Council denied Sanders's request for review. (AR 1.)

## FACTUAL HISTORY

Sanders was born in 1961 and was 52 years of age at the alleged onset date of her disability. (AR 213.) The ALJ found that Sanders had severe impairments of left hip degenerative joint disease, fibromyalgia, hepatitis C infection, and mild obesity. (AR 36.) The ALJ determined Sanders had the Residual Functional Capacity (RFC) to perform sedentary work with frequent stooping, crouching, and balancing, but only occasional crawling or climbing ladders/ropes/scaffolds. (AR 39.) The ALJ concluded at Step Four, based on the testimony of a vocational expert, that Sanders could perform her past relevant work as a telemarketer. (AR 44.)

## STANDARD OF REVIEW

The Commissioner employs a five-step sequential process to evaluate SSI and DIB claims. 20 C.F.R. §§ 404.1520; 416.920; *see also Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing she (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) claimant's RFC precludes her from performing her past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to

1  deny benefits only "when the ALJ's findings are based on legal error or are not supported

2  by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033,

3  1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve

4  conflicts in the evidence, and if the evidence can support either outcome, the court may not

5  substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (quoting *Richardson*

6  *v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d

7  1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed

8  simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143

9  F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir.

10  1989)). Reviewing courts must consider the evidence that supports as well as detracts from

11  the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

**DISCUSSION**

13  Sanders argues the ALJ committed two errors: (1) he failed to account for

14  limitations arising from Sanders's hand impairments; and (2) he failed to provide clear and

15  convincing reasons for rejecting her symptom testimony.

16  **Hand Impairments**

17  Sanders argues the ALJ erred in not finding her hand impairments severe at Step

18  Two and including manipulative limitations in the RFC. At Step Two, the ALJ found that

19  Sanders's left hand condition was non-severe. (AR 36.) The ALJ noted Sanders's history

20  of left hand surgery and 4/5 left upper extremity strength in August 2014, but he found that

21  "the evidence d[id] not demonstrate ongoing restrictions due to this condition." (*Id.*) The

22  ALJ stated that he had considered Sanders's reports of bodily pain related to the severe

23  impairment of fibromyalgia. (*Id.*)

24  A finding of disability requires an "inability to do any substantial gainful activity

25  by reason of any medically determinable physical or mental impairment." 20 C.F.R.

26  §§ 404.1505, 416.905. A physical or mental impairment must last or be expected to last for

27  12 or more months and must be "established by medical evidence consisting of signs,

28  symptoms, and laboratory findings, not only by your statement of symptoms." 20 C.F.R.

§§ 404.1508, 404.1509, 416.907, 416.909. An impairment is "not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921.

To support her severe-impairment argument, Sanders cites a November 2014 record that also documented 4/5 left upper extremity strength (AR 341), and an August 2015 record documenting her report of left arm pain (AR 452). She argues the evidence, in total, establishes handling limitations resulting from the prior surgery or bodily pain from fibromyalgia.

Although Sanders reported to doctors that she had hand surgery in the late 1970s, she never sought treatment specific to hand pain or limitations. Limited records indicate a slight reduction in left arm strength and left arm pain but nothing specific to her hand. Further, no record evidence or medical opinion documents any handling limitations. Sanders had engaged in sedentary work for more than 30 years after her hand surgery and there is no evidence of a change in symptoms, other than fibromyalgia pain which the ALJ considered. Sanders points to no evidence of record that her hand impairment significantly limited her ability to do basic work activities for 12 or more months. Further, the ALJ acknowledged Sanders's reports of pain and considered them when formulating the RFC. Sanders failed to establish any other limitation that should have been included in the RFC finding. In relation to Sanders's hand impairment, she has not shown that the ALJ erred at Step Two or in formulating the RFC.

**Sanders's Symptom Testimony**

Sanders argues the ALJ failed to provide clear and convincing reasons to reject her symptom testimony. In general, "questions of credibility and resolution of conflicts in the testimony are functions solely" for the ALJ. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). However, "[w]hile an ALJ may certainly find testimony not credible and disregard it . . . [the court] cannot affirm such a determination unless it is supported by specific findings and reasoning." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884-85 (9th Cir. 2006); *Bunnell v.*

*Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1995) (requiring specificity to ensure a reviewing court the ALJ did not arbitrarily reject a claimant's subjective testimony); SSR 96-7p. "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

Initially, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell*, 947 F.2d at 344). The ALJ found Sanders had satisfied part one of the test by proving an impairment that could produce the symptoms alleged. (AR 41.) Next, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins*, 466 F.3d at 883; *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) (holding an ALJ can reject claimant testimony if he finds evidence of malingering). Defendant argues there is sufficient evidence of malingering to preclude the need to find other clear and convincing reasons to discount Sanders's testimony. The ALJ noted a primary care doctor documented that Sanders "[did] not seem to experience pain when distracted." (AR 41 (citing AR 354).) Although the ALJ mentioned this twice in his opinion, he did not make an affirmative finding of malingering. Therefore, to support his rejection of Sanders's assertions regarding the severity of her symptoms, the ALJ had to provide clear and convincing, specific reasons. *See Robbins*, 466 F.3d at 883.

In November 2014, Sanders completed an Exertional Daily Activities Questionnaire in which she stated that bending over caused pain; her longest walk was 7 minutes to the mailbox and back (AR 257); she cooked and did laundry and light chores, needing to rest at least once per hour due to fatigue and pain; she was limited to lifting and carrying 5 pounds with either hand and did so infrequently (AR 257, 258); she grocery shopped once per week with help from her children; she could sleep 3 hours in a row, for a total of 5-6 hours at night and a 1-2 hour afternoon nap (AR 258); she experienced chronic pain at all

times, with medication reducing it from 10 to a 7; her legs, torso, and arms ached constantly; she often felt weak and tired (AR 257, 259); and she was taking diclofenac, Lyrica, and Endocet (AR 260). In April 2015, Sanders completed a second Exertional Daily Activities Questionnaire in which she stated that, when she was up to it, she did her personal hygiene, dinner dishes, one load of laundry, cooking, or other chores, but had help as necessary (AR 269, 270); due to pain she could not sit for long without putting up her legs, her upper body ached when sitting still, her left arm was low functioning and her right arm and left knee often ached (AR 269, 271); she could not concentrate for long due to pain; her maximum walking was 100 yards for 10 minutes (AR 269); she avoided lifting and could not do more than 5 pounds; she grocery shopped with help once a month; she slept 1-2 hours undisturbed for a total of 5 hours a night; she rested many times a day and sometimes took a 1-2 hour nap; and she was taking Lyrica, and acetaminophen and Oxycodone for pain (AR 270).

At the hearing, Sanders testified that she slowly dressed herself most days but it could be a struggle, and she tried to shower every other day but sometimes it was too much to handle (AR 65-66, 67); most days she would cook, but she was not able to do so every day due to pain or exhaustion (AR 66); she stated toileting could be difficult due to pain; she did simple household chores such as one load of laundry but did not mop or vacuum (AR 66, 67); she enjoyed sitting and sewing on a pillow if up to it; she went to Mass and on occasional visits to her childrens' homes; she shopped once per month after taking a high dose of Tylenol, and her children did the lifting (AR 68); she slept at most 5 hours and it was interrupted due to pain (AR 67-68); she could not perform telemarketing because she was unable to sit all day (AR 73); with sitting, her hip pain radiated into her back and down her leg, and the fibromyalgia caused radiating aching pain (AR 73-74); the pain had gotten worse since 2014 and radiated into the groin area and her right knee had begun to ache (AR 76); she could sit for 20 minutes, stand 15 minutes, and walk four blocks; she tried to walk and exercise her legs but would stop before it caused pain; she could carry

1 only two pounds (AR 78); picking things up was difficult and often she used a pincher (AR

2 78-79); and she avoided stairs (AR 79).

3 The ALJ found that Sanders's testimony about the effect of her symptoms was "not

4 generally consistent with the medical evidence and other evidence in the record"; therefore,

5 he included her symptom testimony in his functional assessment only as consistent with

6 other evidence. (AR 41.) The ALJ cited a variety of different ways in which record

7 evidence was not consistent with Sanders's testimony that her symptoms precluded her

8 from doing even sedentary work. First, the ALJ relied upon Dr. Rayman's finding that

9 Sanders did not seem to experience pain when distracted. (AR 355.) The doctor noted that

10 Sanders signaled tenderness to palpation of her back but evidenced lack of pain when

11 distracted. The ALJ was entitled to rely upon that finding. This was a specific, valid reason

12 to find Sanders's pain testimony not fully credible. *See Batson v. Comm'r of Soc. Sec.*

13 *Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (finding ALJ properly relied on doctor that

14 found pain symptoms inconsistent with examination findings); *Hamilton v. Comm'r of Soc.*

15 *Sec. Admin.*, 368 F. App'x 724, 726 (9th Cir. 2010) (finding ALJ properly relied on doctor

16 notes of claimant's exaggerated pain response in evaluating claimant testimony).

17 Second, the ALJ discounted Sanders's symptom testimony regarding her

18 fibromyalgia because she obtained some medication relief and her hepatitis C because it

19 improved with medication. The ALJ found these impairments were reflected in a sedentary

20 exertion level but noted that Sanders was not currently taking any prescription medications

21 for these conditions, indicating providers or Sanders did not find them necessary. (AR 42.)

22 Sanders does not dispute the ALJ's finding that her hepatitis C improved with medication,

23 which is supported by the records showing that she was cured of the virus. (AR 490.)

24 Sanders also reported, after hepatitis C treatment, that she had more energy and less fatigue.

25 (AR 485.)

26 The ALJ also relied on Sanders's fibromyalgia improving with medication and the

27 fact that she was not taking any prescription medication at the time of the hearing. Sanders

28 argues this was not a valid reason to discount her testimony because the record shows most

1  medications did not work for her or had intolerable side effects. In October and November

2  2014, Sanders reported Lyrica reduced her symptoms and she was tolerating the

3  medication. (AR 339, 358.) She discontinued Lyrica in February 2015, because it was not

4  helping. (AR 442.) However, she requested to restart it in April of that year and, in June,

5  reported it was helping. (AR 444, 446, 449.) Records don't reveal why or when she stopped

6  taking it. At the January 2017 hearing, Sanders stated she was taking only GERD

7  medication because anti-inflammatory medications exacerbated the GERD and caused skin

8  peeling. (AR 75.) While intolerable side effects are a legitimate reason to decline

9  prescription medication, *see* SSR 96-3p, there is no evidence that Lyrica caused Sanders

10  unacceptable side effects. Additionally, Sanders had been prescribed other medications

11  over time that she reported as helping without side effects: diclofenac cream helped her

12  knee pain (AR 457), hydroxyzine helped her sleep (AR 457), and she had used a lidocaine

13  patch for pain without complaint (AR 456, 461, 464). Yet, at the time of the hearing, she

14  told the ALJ that her only prescription medication was for GERD. Sanders choice not to

15  use available prescription medications, without explanation, was a specific, valid reason to

16  find her symptom testimony not fully credible. *See Parra*, 481 F.3d at 751 (finding

17  treatment solely with over-the-counter pain medication grounds to discount claimant's

18  testimony); *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (relying on the claimant's

19  absence of prescription medication use).

20      Third, in discussing Sanders's symptom testimony, the ALJ noted that Sanders

21  declined physical therapy. (AR 42, 44.) An ALJ may discredit a claimant's testimony for

22  an "'unexplained or inadequately explained failure to seek treatment or to follow a

23  prescribed course of treatment,'" *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)

24  (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)); *Burch v. Barnhart*,

25  400 F.3d 676, 681 (9th Cir. 2005) (finding failure to follow-through on recommended

26  treatment a valid reason to discount claimant's pain testimony); SSR 16-3p (approving

27  discounting a claimant's symptom testimony if she "fails to follow prescribed treatment

28  that might improve symptoms). Sanders's primary care doctor recommended physical

1  therapy multiple times and she declined, stating she had tried it and found it not helpful.

2  (AR 350 (not interested in PT referral because prior round not beneficial), 449 (did "a lot"

3  of PT in the past but provided no documentation; refuses to do again), 464 (declining PT

4  "until she gets oral pain medications").) The record contains documentation of Sanders

5  receiving physical therapy after a car accident in early 2013 (for neck, back, and right arm

6  pain) and finding the treatment beneficial. (AR 511-16.) Sanders refused recommended

7  treatment on the basis that she had tried it previously and it did not help. The only evidence

8  of prior physical therapy was not for fibromyalgia or hip pain, and she reported to her

9  therapist that she improved from the treatment. Despite acknowledging Defendant's

10  argument on this point, Sanders did not dispute the ALJ's finding regarding physical

11  therapy. (*See* Doc. 20 at 4-5.) Because Sanders refused treatment without a well-founded

12  reason, that was a valid reason for the ALJ to discount her symptom testimony.

13  Finally, there is substantial evidence to support the ALJ's finding that the objective

14  medical evidence was unremarkable. The ALJ recognized that an MRI revealed

15  osteoarthritis in Sanders's hips, mild to moderate on the right and moderate on the left,

16  with mild right bursitis. (AR 41.) Additionally, the ALJ ultimately acknowledged that

17  exams revealed that Sanders had an antalgic gait (AR 44), although earlier in his opinion

18  he noted "reports of steady ambulation without assistance and normal gait." (AR 41). There

19  are limited records that reflect a normal gait but, on balance, the record demonstrates that

20  Sanders's gait was slow or antalgic most of the time, and she walked with a cane at times.

21  (AR 321, 341, 346, 393, 398, 443, 446, 455, 464.) However, Sanders's slump test was

22  negative (AR 321); at most appointments, Sanders was not in acute distress (AR 321, 340,

23  358, 397, 443, 450, 455, 460, 477, 488, 494); her leg strength and reflexes were normal

24  (AR 321, 341, 393, 397); she had normal muscle tone (352, 359, 443, 450); and she was

25  neurologically intact (AR 346, 393, 397). There are objective findings that support

26  Sanders's position[1] but "the key question is not whether there is substantial evidence that

27

28  [1] Sanders typically (but not always) exhibited limited or painful range of motion in her left hip or both hips. (AR 345, 393, 397, 466, 470, 472.) However, the ALJ limited her to sedentary work which would require only limited hip movement.

1 could support a finding of disability, but whether there is substantial evidence to support

2 the Commissioner's actual finding that claimant is not disabled." *Jamerson v. Chater*, 112

3 F.3d 1064, 1067 (9th Cir. 1997). There is substantial record evidence to support the ALJ's

4 finding that, with limited exceptions accommodated by the ALJ with a sedentary exertion

5 level (AR 41), the objective medical evidence was unremarkable. *See Valentine v. Comm'r*

6 *Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (defining substantial evidence as

7 "such relevant evidence as a reasonable mind might accept as adequate to support a

8 conclusion."); *Burch*, 400 F.3d at 680–81 (9th Cir. 2005) (quoting *Magallanes*, 881 F.2d

9 at 750) ("[w]e must uphold the ALJ's decision where the evidence is susceptible to more

10 than one rational interpretation."); *Batson*, 359 F.3d at 1196 ("When evidence reasonably

11 supports either confirming or reversing the ALJ's decision, we may not substitute our

12 judgment for that of the ALJ.").

13      The Court identified four valid grounds cited by the ALJ to find Sanders's symptom

14 testimony not fully credible. The Court finds they are supported by substantial evidence

15 and satisfy the clear and convincing standard. Because these reasons are enough to affirm

16 the ALJ's finding, the Court does not reach the remaining grounds upon which the ALJ

17 relied. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008)

18 (upholding ALJ credibility finding based on multiple valid reasons even though other

19 reasons were legally erroneous).

20 **CONCLUSION**

21      A federal court may affirm, modify, reverse, or remand a social security case. 42

22 U.S.C. § 405(g). The Court concludes the ALJ did not err as to the two claims raised by

23 Sanders. Therefore, Sanders is not entitled to relief and her appeal is denied.

24      Accordingly,

25

26

27

28

1    **IT IS ORDERED** that Plaintiff's case is **DISMISSED** and the Clerk of Court shall

2  enter judgment.

3        Dated this 8th day of July, 2019.

4

5

6    _Lynnette C. Kimmins_

     Honorable Lynnette C. Kimmins

7    United States Magistrate Judge